IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE RICHARD T. MOORE | : | CIVIL ACTION |
| and CAROL J. MOORE | : | NO. 15-1853 |
| | : | |
| | : | (BANKRUPTCY NO. 14-11692) |

| | | |
|---|---|---|
| IN RE TIMOTHY CHARLES MOORE | : | CIVIL ACTION |
| and REBECCA JO MOORE | : | NO. 15-2007 |
| | : | |
| | : | (BANKRUPTCY NO. 13-11090) |

## MEMORANDUM OPINION

**Savage, J.**                                                                                               **March 31, 2016**

Embassy Bank for the Lehigh Valley ("Embassy Bank") appeals from the bankruptcy court's orders denying its motion and granting First Niagara Bank's ("First Niagara") motion for distribution of proceeds from the sale of the debtors' land. The bankruptcy court's decision turned on its determination that First Niagara's predecessor, Harleysville National Bank ("HNB"), did not release the mortgage on the land. At the core of the dispute are the differing descriptions of the land in the release.

Because the bankruptcy court did not reconcile the different descriptions or explain why it did not accept the legal description over a less precise description, we shall remand.

### Factual and Procedural Background[1]

On May 7, 2002, Timothy C. Moore and Carol J. Moore, son and mother (the "Moores"), acquired a parcel of land located at 215 East 20th Street in Northampton, Pennsylvania. The property, previously referred to as Lots 8 and 9 of Laubach Estates,

---

[1] The facts are recited from the bankruptcy court's March 31, 2015 memorandum opinion. *See generally In re Moore*, 528 B.R. 129 (Bankr. E.D. Pa. 2015).

had a uniform parcel identifier ("UPI") of Map L4SW4B, Block 5, Lot 1. On July 6, 2004, the Moores granted a mortgage in the property to HNB.[2]

The Moores later subdivided the land into two lots. On March 23, 2005, they recorded a subdivision map, designating one lot as Lot 1A, and the other as Lot 1 ("residual Lot 1").[3] In August 2005, the Moores asked HNB to release the mortgage on Lot 1A. HNB executed a release of mortgage on August 24, 2005, which was recorded on September 6, 2005.

The release describes the land released as "Lot 2, Map L4SW4B, Block 5, Lot 1A" and lists the address as 215 East 20th Street,[4] the same address as the original lot before subdivision. It attaches and incorporates the May 7, 2002 deed conveying the original Lot 1 from Dorothy L. Stettler to Timothy C. Moore and Carol J. Moore. The deed identifies the land as Lots 8 and 9 of Laubach Estates and describes it by metes and bounds.[5] It recites its UPI as "Map L4SW4B, Block 5, Lot 1."[6] In other words, the legal description in the deed incorporated in the release includes both residual Lot 1 and Lot 1A, not only Lot 1A.

On April 11, 2006, the Moores executed a deed conveying residual Lot 1 to themselves. In describing the land, the deed refers to the recorded subdivision plan. It recites the UPI as Map L4SW4B, Block 5, Lot 1. On May 31, 2006, the Moores granted two mortgages in residual Lot 1 to Wachovia Bank. On August 21, 2007, seeking to

---

[2] HNB was acquired by First Niagara.

[3] Lot 1A was later assigned a unique street address, 209 East 20th Street.

[4] Release of Mortgage, August 24, 2005, Doc. No. 85-6 (Bankruptcy No. 13-11090), at 2.

[5] *Id.* at 3.

[6] *Id.*

2

refinance the Wachovia mortgages, they applied for a commercial loan in the amount of $136,000.00 from Embassy Bank. The Moores and Embassy Bank agreed to secure the loan by a first mortgage lien on residual Lot 1.

Embassy Bank did not order a full title search or purchase title insurance because bank policy did not require a full title search or title insurance for commercial loans of $150,000.00 or less. Instead, it relied on a limited search, going back only to April 11, 2006, the date the Moores reconveyed residual Lot 1 to themselves. Consequently, Embassy Bank was unaware of HNB's earlier 2004 lien.

After the Moores filed their Chapter 13 bankruptcy petitions,[7] they moved to sell residual Lot 1 free and clear of liens. Granting their motions, the bankruptcy court directed that the net proceeds from the sale be distributed to the lienholders according to the priority to be determined later. Residual Lot 1 was sold for $125,000.00, which was not sufficient to satisfy both First Niagara's and Embassy Bank's claims.

The bankruptcy court held a hearing on First Niagara's motion and Embassy Bank's cross-motion for distribution. The only witness was Terry Stecker, Embassy Bank's senior vice president, whose testimony related to the bona fide purchaser issue.[8] Among the exhibits admitted were the 2002 deed, the 2005 subdivision map, and the HNB release.[9]

---

[7] Carol J. Moore and her husband, Richard T. Moore, are debtors in Civil Action No. 15-1853 (Bankruptcy No. 14-11692). Timothy C. Moore and his wife, Rebecca Jo Moore, are debtors in Civil Action No. 15-2007 (Bankruptcy No. 13-11090). Because the issues and parties in both appeals are identical, we consider them concurrently.

[8] *See* 1/21/15 Hr'g Tr.

[9] *Id.* at 10:16-19, 12:13-16, 14:23-25.

The bankruptcy court concluded the HNB release applied only to Lot 1A and Embassy Bank was not a bona fide purchaser. Accordingly, it determined that First Niagara's interest was senior to Embassy Bank's and directed distribution of the sale proceeds to First Niagara.[10]

Embassy Bank now appeals. It argues that the HNB release covered both residual Lot 1 and Lot 1A, extinguishing First Niagara's lien on both lots. It also contends that even if HNB did not release the lien on residual Lot 1, Embassy Bank is a bona fide purchaser entitled to priority. First Niagara counters that had Embassy Bank performed a thorough title search, it would have discovered HNB released its lien only on Lot 1A, not on residual Lot 1, giving First Niagara, as HNB's successor in interest, a senior lien on residual Lot 1.

### Standard of Review

A district court reviews a bankruptcy court's "legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof." *In re Friedman's, Inc.*, 738 F.3d 547, 552 (3d Cir. 2013) (quoting *In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 816 (3d Cir. 2010)). Where the bankruptcy court's decision involves a mixed question of law and fact, we apply the appropriate standard of review to each. *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003).

A bankruptcy court must consider all relevant facts. *In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 285-86 (3d Cir. 2002). If it does not, the case must be remanded. *Id.* at 286-87.

---

[10] *In re Moore*, 528 B.R. at 136.

**Release of Mortgage**

The release of mortgage contains conflicting descriptions of the land released. At one place, it refers only to Lot 1A, one of the two parcels created by the subdivision of original Lot 1.  At another, it states that HNB is releasing "the Premises described in Schedule 'A' attached hereto and made a part hereof."  Schedule "A" is the deed conveying the original lot to the Moores before the subdivision.  It describes the land by metes and bounds.  Consequently, there is a conflict between the two descriptions.

More specific descriptions of land are given greater weight than less specific ones where there is a discrepancy.  *Pencil v. Buchart*, 551 A.2d 302, 307 (Pa. Super. 1988) (quoting *Dawson v. Coulter*, 106 A. 187, 188 (Pa. 1919)); *see Morrow v. Whitney*, 95 U.S. 551, 555 (1877).  Thus, a metes and bounds description trumps a street address or a less precise descriptor.  *See, e.g.*, *In re Fedor*, No. 5-08-bk-52485, 2009 WL 1173047, at *5 (Bankr. M.D. Pa. Apr. 30, 2009) (citing *In re Wagner*, 353 B.R. 106, 119 n.10 (Bankr. W.D. Pa. 2006)); *In re Dupell*, 235 B.R. 783, 787 n.3 (Bankr. E.D. Pa. 1999).

The bankruptcy court acknowledged that a legal description controls over a street address.[11]  Yet, it did not consider the metes and bounds description attached to the HNB release.  Nor did it inquire about the attached deed when it was mentioned at the January 21, 2015 hearing.[12]  In reaching its decision, the bankruptcy court did not reconcile the conflict between the two descriptions.  It did not explain why it chose the

---

[11] *In re Moore*, 528 B.R. at 134 (citing *In re Fedor*, 2009 WL 1173047, at *5; *In re Wagner*, 353 B.R. at 119; *In re Dupell*, 235 B.R. at 787 n.3).

[12] *See* 1/21/15 Hr'g Tr. at 15:19-16:10.

less specific property description in the release document itself over the more detailed metes and bounds description in the incorporated deed.

We cannot speculate what the bankruptcy court's rationale was.  Nor can we engage in independent fact finding.  *Nantucket Investors II v. Cal. Fed. Bank*, 61 F.3d 197, 210 n.19 (3d Cir. 1995) (citing 28 U.S.C. § 158(a)).  Therefore, we shall remand for the bankruptcy court to explain its rationale for concluding which property description controlled.

## Bona Fide Purchaser Status

If HNB did not release the mortgage lien on the entire parcel, the question is whether Embassy Bank was a bona fide purchaser without actual or constructive notice of the lien.  We conclude that the bankruptcy court's finding that Embassy Bank was not a bona fide purchaser was legally and factually correct.

One who purchases real property without actual or constructive notice of a third party's claim is a bona fide purchaser.  *Lund v. Heinrich*, 189 A.2d 581, 584 (Pa. 1963).  A bona fide purchaser takes the property free and clear of prior third-party claims.  *Id.*  The recording of an instrument gives constructive notice to all subsequent purchasers. 21 P.S. § 357.

The bankruptcy court correctly found that had Embassy Bank performed a full title search, it would have discovered First Niagara's interest.  Indeed, failure to conduct a full title search deprives a buyer of bona fide purchaser status if the search would have conclusively revealed a third party's senior claim.  *Sabella v. Appalachian Dev. Corp.*, 103 A.3d 83, 104 (Pa. Super. 2014).  Embassy Bank, in implementing its policy

6

not to expend the costs of a full title search for loans under $150,000.00, took the risk that its interest would be subordinate to prior liens.

## Conclusion

Because the bankruptcy court did not discuss the legal description in the deed attached to the HNB release in explaining its reasoning for limiting the scope of the release to Lot 1A, we shall remand.